UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ALFONSO HOWARD VELAR,<br><br>   Plaintiff,<br><br>v.<br><br>DIRECT ENERGY SERVICES, LLC and AGR GROUP NEVADA, LLC d/b/a EXECUTIVE ENERGY MANAGEMENT,<br><br>   Defendants. | CIVIL COMPLAINT<br><br>CASE NO. 1:17-cv-00176-WCL-SLC<br><br>DEMAND FOR JURY TRIAL |

*FIRST AMENDED* COMPLAINT

NOW comes ALFONSO HOWARD VELAR ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of DIRECT ENERGY SERVICES, LLC ("Direct"), and AGR GROUP NEVADA, LLC d/b/a EXECUTIVE ENERGY MANAGEMENT ("AGR") (collectively "Defendants") as follows:

NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.*, and the Indiana Deceptive Consumer Sales Act ("IDCSA") under I.C. 24-5-0.5 *et seq.*, for Defendants' unlawful practices.

JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Northern District of Indiana and a substantial portion the events or omissions giving rise to the claims occurred within the Northern District of Indiana.

4.  Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P 20(a)(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and common questions of law or fact will arise.

## PARTIES

5.  Plaintiff is a 65 year-old natural "person" as defined by 47 U.S.C. §153(39).

6.  Direct is an independent energy supplier. On its website, it states, "We make energy work harder for our nearly five million home and business customers across North America. We compete to earn their business every day."[1] With its principal place of business located at 12 Greenway Plaza, Suite 250, Houston, Texas, Direct is a Delaware corporation that regularly conducts business with consumers in Indiana.

7.  AGR is a consulting company that provides "critical management support to sales and support services across the energy industry."[2] AGR is organized under the laws of the state of Nevada with its principal place of business located at 6275 South Pearl Street, Unit 100, Las Vegas, Nevada. AGR regularly conducts business with consumers in Indiana.

8.  Defendants are "person[s]" as defined by 47 U.S.C. §153(39).

9.  Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

---

[1] https://www.directenergy.com/about
[2] http://www.executiveenergy.com/

## FACTS SUPPORTING CAUSES OF ACTION

10. Around the summer of 2015, Plaintiff began receiving calls from Defendants to his cellular phone, (313) XXX-5320.

11. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner and operator of the cellular phone ending in 5320. Plaintiff is and has always been financially responsible for the cellular phone and its services.

12. Upon information, Direct contracts with AGR such that AGR assists Direct with the placing of solicitation calls to consumers and/or places such calls itself.

13. The phone number that Defendants most often use to contact Plaintiff is (810) 620-1478.

14. Upon information and belief, the phone number ending in 1478 is regularly used by Defendants during their solicitation of consumers.

15. Upon speaking with Defendants, Plaintiff discovered that they were trying to solicit him to use Direct for energy services.

16. Prior to receiving phone calls from Defendants, Plaintiff was not aware as to what Direct was or why Defendants would be calling him.

17. Plaintiff is unaware as to how Defendants received his information.

18. When Plaintiff answers calls from Defendants, he experiences a recorded message requesting a call back.

19. Upon calling back Defendants and speaking with one of their representatives, Plaintiff demanded that they stop calling him and that they place his phone number on their do-not-call list.

20. Defendants' representative informed Plaintiff that they would enter his number on the do-not-call list.

21. Despite Plaintiff's demands and Defendants' assurances, Defendants continued to regularly call his cellular phone up until the winter of 2015.

22. Defendants have also called Plaintiff's cellular phone multiple times during the same day, with some of the calls coming in just minutes apart from one another.

23. For instance, on September 16, 2015, Defendants called Plaintiff's cellular phone not less than 7 times in a span of 8 hours.

24. Plaintiff has received not less than 41 calls from Defendants since asking them to stop calling.

25. Plaintiff is disabled and takes medication for congestive heart failure and high blood pressure.  Defendants' phone calls have increased his stress and worsened his physical condition overall.

26. Frustrated over the persistent phone calls, Plaintiff spoke with Sulaiman regarding his rights, resulting in expenses.

27. With the goal of specifically addressing Defendants' conduct, Plaintiff has spent approximately $53.00 to purchase and maintain an application subscription on his cellular phone to block the calls, resulting in pecuniary loss.

28. Plaintiff has been unfairly and unnecessarily harassed by Defendants' actions.

29. Plaintiff has suffered concrete harm as a result of Defendants' actions, including but not limited to, invasion of privacy, aggravation that accompanies solicitation telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of his telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on his cellular phone, and diminished space for data storage on his cellular phone.

<u>COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT</u>
AGAINST DEFENDANTS

30. Plaintiff repeats and realleges paragraphs 1 through 29 as though fully set forth herein.

31. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent. The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

32. Defendants used an ATDS in connection with their communications directed towards Plaintiff. The recorded message that Plaintiff experienced during answered calls before calling Defendants back and being connected to a live representative is instructive that an ATDS was being used. Similarly, the frequency and nature of Defendants' contacts strongly suggest that a predictive dialing ATDS was being used to generate them.

33. Defendants violated the TCPA by placing phone calls to Plaintiff's cellular phone using an ATDS without his consent. Plaintiff was never interested in Direct's services and never consented to receive solicitation calls from Defendants through means of an ATDS. Even if Plaintiff *may* have inadvertently consented to receive these calls, such permission was explicitly revoked by his demands to cease contact.

34. The calls placed by Defendants to Plaintiff were regarding business solicitation and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

35. Direct is directly and/or vicariously liable for the phone calls placed to Plaintiff. *See* FCC May 9, 2013 Order, 28 FCC Rcd. 6574. AGR is directly liable for its role in placing the phone calls to Plaintiff.

36. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendants are liable to Plaintiff for at least $500.00 per call.  Moreover, Defendants' willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff, ALFONSO HOWARD VELAR, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Enjoining Defendants to cease contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### AGAINST DEFENDANTS

37. Plaintiff repeats and realleges paragraphs 1 through 36 as though fully set forth herein.

38. Defendants violated I.C. 24-5-0.5-3(a) and (b)(19) by engaging in an unfair, abusive and deceptive practices through their systematic solicitation efforts towards Plaintiff.

39. The IDCSA states:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." I.C. 24-5-0.5-3(a).

> "Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: The violation by a

6

supplier of 47 U.S.C. 227, including any rules or regulations issued under 47 U.S.C. 227." I.C. 24-5-0.5-3(b)(19).

40. Plaintiff is a "person" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(2).

41. Defendants are "supplier[s]" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(3).

42. Defendants' solicitation calls to Plaintiff were "consumer transactions" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(1)(C).

43. Defendants engaged in unfair, abusive, and deceptive behavior in their transactions with Plaintiff. Through systematic and frequent solicitation, Defendants used an ATDS to relentlessly contact Plaintiff. Defendants were specifically notified by Plaintiff that he was not interested in Direct's services and to stop contacting him. Plaintiff never gave Defendants consent to contact his cellular phone via an ATDS, and any consent that he *may* have inadvertently given was explicitly revoked by Plaintiff's multiple demands to cease contacting him. However, Defendants purposefully ignored Plaintiff's prompts in an abusive attempt to solicit business from him.

44. Through their conduct, Defendants falsely represented that they had the lawful ability to contact Plaintiff through means of an ATDS. However, Defendants' fraudulent representations did not stop at just actions. Defendants also made knowingly false assurances to Plaintiff when telling him that they would enter his phone number on their do-not-call list. Upon information and belief, Defendants engage in this conduct on a systematic and frequent basis, knowing that consumers are unlikely to be aware of their rights and susceptible to sustained pressure.

45. Defendants also placed multiple phone calls to Plaintiff's cellular phone during the same day. Placing 7 phone calls in an 8 hour span is abusive behavior that is intended to harass Plaintiff into submission by causing his phone to ring repeatedly.

46. In violating the TCPA, Defendants engaged in illegal behavior during their solicitation efforts towards Plaintiff. Defendants intended that Plaintiff rely on their illegal behavior. The

IDCSA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendants.

47. The IDCSA further states:

> "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." I.C. 24-5-0.5-4(a)(1)(2).

48. Defendants' conduct is part of an incurable deceptive act to which notice would not remedy. Although unsuccessful, Plaintiff made attempts to correct Defendants' incurable deceptive acts by demanding that they cease contacting him. Plaintiff took the time to call Defendants back and demand that they stop calling him. However, Defendants' conduct is an incurable deceptive act of which notice would not remedy. The fact that Defendants were provided with notice to stop calling and refused to abide by said notice, evidenced by calling Plaintiff at least 41 times after he told them to stop, shows that their behavior is incurable. Defendants also made overtly false representations when they stated that they would place Plaintiff's phone number on their do-not-call list and then continued their conduct.

49. Defendants conduct the above described behavior on a wide and frequent basis. This goes against the state's goal of preventing the phone from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious.

50. In addition to inhibiting Plaintiff's time and energy, as pled in paragraphs 24 through 29, Plaintiff has suffered damages as a result of Defendants' unlawful solicitation practices, including spending money on the purchase of a mobile phone application and suffering from increased stress. Plaintiff is entitled to relief pursuant to I.C. 24-5-0.5-4(a)(1)(2).

WHEREFORE, Plaintiff, ALFONSO HOWARD VELAR, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages, in an amount to be determined at trial, as provided under I.C. 24-5-0.5-4(a)(1)(2);

c. Awarding Plaintiff costs and reasonable attorney fees as provided under I.C. 24-5-0.5-4(a);

d. Enjoining Defendants to cease contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: November 21, 2017                                        Respectfully submitted,

s/ Nathan C. Volheim                                            s/Taxiarchis Hatzidimitriadis
Nathan C. Volheim, Esq. #6302103                                Taxiarchis Hatzidimitriadis, Esq. #6319225
Counsel for Plaintiff                                           Counsel for Plaintiff
Admitted in the Northern District of Indiana                    Admitted in the Northern District of Indiana
Sulaiman Law Group, Ltd.                                        Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200                             2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                                         Lombard, Illinois 60148
(630) 568-3056 (phone)                                          (630) 581-5858 (phone)
(630) 575-8188 (fax)                                            (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                                        thatz@sulaimanlaw.com